See 206 Or App 761, 138 P3d 931 (2006)

## Jay WESTON
### and Helen Weston,
### husband and wife,
*Appellants,*

*v.*

## CAMP'S LUMBER & BUILDING SUPPLY, INC.,
### an Oregon corporation;
### Friesen Lumber Company,
### an Oregon corporation;
### Portac, Inc.,
### a Delaware corporation;
### and Taylor Lumber Company,
### an Oregon corporation,
*Respondents,*

*and*

## OREGON INSULATION SUPPLY INC.,
### an Oregon corporation,
### dba Exterior Systems, Inc.,
### Dryvit Systems, Inc.,
### a Rhode Island corporation;
### Bliss Roofing, Inc.;
### Weigel Decking & Remodeling;
### Gary L. Thompson,
### dba Portland Plastering Company;
### J.D. Meyers Enterprises, Inc.,
### an Oregon corporation;
### Steven Brock;
### and Stimson Lumber Company,
*Defendants below.*

0205-05172; A123726

135 P3d 331

Frank L. Bearden, Judge.

Dean E. Aldrich argued the cause for appellants. With him on the opening brief were Lee Street and The Aldrich Law Office, P.C.

Theodore F. Sumner argued the cause for respondent Camp's Lumber & Building Supply, Inc. With him on the brief were Gary V. Abbott and Abbott & Prange, P.C.

David B. Wiles, Julie A. Lucas, and Ashcroft, Wiles LLP and Alexander Libmann and Law Offices of Robert Dorband filed the brief for respondent Friesen Lumber Company.

Thomas Christ argued the cause for respondent Portac, Inc. With him on the brief was Cosgrave Vergeer Kester LLP.

John R. MacMillan and MacMillan, Scholz & Marks, P.C., filed the brief for respondent Taylor Lumber Company.

Before Edmonds, Presiding Judge, and Schuman, Judge, and Wallace, Judge pro tempore.

EDMONDS, P. J.

**EDMONDS, P. J.**

Plaintiffs initiated this civil action for damages against a lumber retailer, Camp's Lumber & Building Supply, Inc. (Camp), and the lumber manufacturers or wholesalers, Friesen Lumber Company (Friesen), Portac, Inc. (Portac), and Taylor Lumber Company (Taylor) (collectively, the lumber defendants), that provided the lumber used to construct plaintiffs' residence.[1] Plaintiffs asserted claims for damages under multiple legal theories, alleging that the lumber inspected and provided by the lumber defendants contained a wood-boring beetle larvae that, through infestation, compromised the structural integrity of their residence. The lumber defendants moved for summary judgment, arguing that plaintiffs' claims, regardless of how they were couched, were product liability claims barred by ORS 30.905(1) (2001), *amended by* Or Laws 2003, ch 768, § 1, the statute of ultimate repose for such claims. The trial court agreed with the lumber defendants and entered a limited judgment dismissing the claims against them. Plaintiffs appeal that judgment, arguing that ORS 30.905 (2001) does not apply to their claims and that, in any event, their claims were brought within the time limits established by that statute. For the reasons discussed below, we reverse the trial court's grant of summary judgment as to plaintiffs' Unlawful Trade Practices Act (UTPA) claim and reverse, in part, as to their claim against Camp for breach of warranty; we otherwise affirm.

We assume, for purposes of reviewing the trial court's grant of summary judgment, the truth of the facts set forth in the affidavits of plaintiffs' lay and expert witnesses, and any uncontroverted facts set forth by defendants. ORCP 47 C. In 1993, plaintiffs began construction of their dream house. Plaintiffs acted as their own general contractors and chose Camp as their lumber supplier. Plaintiffs relied on Camp to select lumber suitable for the framing of their house. Camp informed plaintiffs that it was unnecessary to use kiln-dried lumber, and instead told plaintiffs that Camp could

---

[1] Plaintiffs settled with defendant Stimson Lumber Company, and it is not a party to this appeal. Plaintiffs also asserted claims against the providers and installers of the synthetic stucco siding system on the exterior of their house, but this appeal does not involve those claims.

supply green lumber that was graded "standard or better" and would be suitable for the construction of their residence. The lumber was purchased and delivered to plaintiffs' property during a four-week period from the end of May to late June 1993.

Unbeknownst to plaintiffs, the lumber that was delivered to their property (and manufactured by Friesen, Portac, and Taylor) contained golden buprestid beetle larvae. The golden buprestid beetle, a wood-boring beetle, is a destructive forest pest in the Pacific Northwest. Its larvae can take up to 50 years to develop into adulthood. During this time, the larvae excavates and can cause serious structural damage to the lumber in which it is embedded. When the adult beetles emerge from the lumber, they are capable of boring through surrounding building components (such as roofing and interior and exterior finishes).

Golden buprestid beetle larvae can be destroyed by kiln-drying lumber before it is shipped to a consumer. However, once infested lumber is used in a building, it is difficult, if not impossible, to control the infestation and to prevent continued larval development and adult emergence. To eliminate the infestation, the infested lumber and any lumber that is suspected of infestation must be removed and replaced.

In 2002, in the course of correcting problems with synthetic stucco siding on their house, plaintiffs found evidence of the golden buprestid larvae and beetles in their residence. The larvae and beetles had bored through the building materials of plaintiffs' house; according to plaintiffs' experts, the beetles will continue to do so for the next 20 to 30 years. As a result, the structural integrity of plaintiffs' house is compromised. To remedy the problem, plaintiffs must destroy the structure and then have it rebuilt. According to plaintiffs, "[t]his is the only way to ensure that: (1) golden buprestids are removed from plaintiffs' home; (2) all existing structural damage is repaired; (3) there will be no future risk of continued golden buprestid infestation and damage; and (4) the home will be insurable."

Plaintiffs commenced this action in May 2002— more than eight years after their purchase of defendants'

lumber in June 1993. Initially, they alleged claims in negligence, violation of the UTPA, negligent misrepresentation, and breach of express warranty.[2] In April 2003, plaintiffs added a trespass claim to their action. Defendants subsequently moved for summary judgment, arguing, among other propositions, that all of plaintiffs' claims are barred by ORS 30.905 (2001), the statute setting forth limitation periods for bringing product liability claims. At the hearing on defendants' motions, the trial court ruled:

> "[T]he gravamen of the pleadings of the Complaint all sound in product liability and [ ] they do not sound—the gravamen of Trespass is not there, the gravamen of negligence is not there on a factual basis, and the eight-year statute [of ultimate repose in ORS 30.905(1) (2001)] governs and summary judgment is granted."

The court then clarified that its ruling "would also include the Unfair Trade Practices Act and the warranty claims." Subsequently, the court entered a limited judgment dismissing plaintiffs' claims against the lumber defendants.

On appeal, plaintiffs challenge the trial court's grant of summary judgment on a number of grounds. Initially, plaintiffs argue that ORS 30.905 (2001) does not apply to any of their claims. They contend that their UTPA and breach of warranty claims are governed by the UTPA and Uniform Commercial Code statutes of limitations, respectively, and are not subject to the limitation periods set forth in ORS 30.905 (2001). Similarly, they contend that their trespass, negligence, and negligent misrepresentation claims do not arise from a product defect or failure to warn of the defect, but from the release of destructive pests onto plaintiffs' property. Thus, according to plaintiffs, the gravamen of those claims is not based on a product defect or failure to warn, and ORS 30.905 (2001) is inapplicable.

Next, plaintiffs argue that, even if ORS 30.905 (2001) applies to their claims, their claims were timely under that statute. According to plaintiffs, the eight-year limitation period in ORS 30.905(1) (2001) does not require that all

---

[2] Plaintiffs' original complaint also included strict liability claims, but those claims were not alleged in the fourth amended complaint against which the lumber defendants moved for summary judgment.

claims be *filed* within eight years of the date of purchase of the product. Rather, as we construed identical language in a precursor to ORS 30.905(1) (2001) in *Baird v. Electro Mart,* 47 Or App 565, 615 P2d 335 (1980), as long as a plaintiff is injured before the eight-year period expires, the plaintiff then has an additional two years to file a claim. Plaintiffs submit that their claims are timely under *Baird* "because damage occurred just prior to the eight-year anniversary of the purchase of the lumber and plaintiffs brought their claims within two years thereafter."

The lumber defendants respond that all of plaintiffs' claims—regardless of the labels used by plaintiffs—are product liability claims. Specifically, the lumber defendants rely on our holdings in *Simonsen v. Ford Motor Co.*, 196 Or App 460, 102 P3d 710 (2004), *rev den*, 338 Or 681 (2005), and *Kambury v. DaimlerChrysler Corp.*, 185 Or App 635, 60 P3d 1103 (2003), in which, according to the lumber defendants, we held that ORS 30.905 applies to all claims that fit within the definition of a "product liability civil action." The lumber defendants argue that plaintiffs' claims for damages based on the presence of beetles/larvae in the lumber fit squarely within that definition.

In response to plaintiffs' argument that their claims were timely under the eight-year/two-year scheme in *Baird*, the lumber defendants offer two arguments. First, the lumber defendants contend that *Baird* was incorrectly decided. Second, they argue that, even assuming that *Baird* is good law, plaintiffs' claims are untimely because the damage in this case occurred when plaintiffs received infested lumber, and their claims were not brought within two years of that date.

For the reasons that follow, we affirm the trial court's judgment as to the trespass, negligence, and negligent misrepresentation claims, and affirm in part as to the breach of express warranty claim against Camp. We reverse and remand as to the trial court's grant of summary judgment on the UTPA claim and, in part, as to the breach of warranty claim against Camp.

A.  *The applicable statutory limitation periods*

The parties' arguments, as noted above, focus on the applicability and construction of ORS 30.905,[3] which provides the limitation periods for filing "product liability civil actions." ORS 30.905 states:

"(1)   Notwithstanding ORS 12.115 or 12.140 and except as provided in subsection (2) of this section and ORS 30.907 and 30.908(1) to (4), a product liability civil action shall be commenced not later than eight years after the date on which the product was first purchased for use or consumption.

"(2)   Except as provided in ORS 30.907 and 30.908(1) to (4), a product liability civil action shall be commenced not later than two years after the date on which the death, injury or damage complained of occurs."

For purposes of that statute, a "product liability civil action" is defined in ORS 30.900 as

"a civil action brought against a manufacturer, distributor, seller or lessor of a product for damages for personal injury, death or property damage arising out of:

"(1)   Any design, inspection, testing, manufacturing or other defect in a product;

"(2)   Any failure to warn regarding a product; or

"(3)   Any failure to properly instruct in the use of a product."

ORS 30.900 and ORS 30.905 were enacted in 1977 as part of House Bill (HB) 3039 in response to concerns that insurance premiums were skyrocketing as a result of product liability claims. *See* Minutes, House Committee on the Judiciary, Apr 18 and May 5, 1977. The proposed solutions to the

---

[3] In 2003, while this case was pending, the legislature amended ORS 30.905 (2001) to extend the statute of ultimate repose for product liability civil actions to ten years after the date that the product was first purchased for use or consumption. Or Laws 2003, ch 768, § 1. The amendments also contained a provision that revived certain actions adjudicated under the earlier version of the statute and in which a final judgment was entered after June 8, 2001 but before January 1, 2004, the effective date of the amendments. Or Laws 2003, ch 768, §§ 2, 3. Because final judgment in this case was not entered until late January 2004, the amendments—and their revival provisions—do not apply in this case. Unless otherwise noted, all subsequent references to ORS 30.905 are to the 2001 version of the statute.

perceived problem were far-reaching, and initial drafts of HB 3039 involved concepts such as a codification of strict liability, caps on punitive damages, statutes of limitations and ultimate repose specific to product liability claims, and providing defenses for sellers and manufacturers whose products are modified after leaving their hands. Minutes, House Committee on the Judiciary, Apr 18, 1977, Ex A (synopsis of HB 3039). Ultimately, the legislature narrowed its focus to three objectives: (1) a limited and predictable time period during which a manufacturer, distributor, seller, or lessor would be exposed to a product liability civil action; (2) a presumption in a product liability action that a product as manufactured and sold or leased is not unreasonably dangerous for its intended use; and (3) a defense to a product liability action based on the alteration and modification of the product under certain circumstances.[4]

The legislature, however, spent little time debating what was or was not a "product liability civil action." Although legislators and others testifying mentioned negligence, strict liability, and breach of implied warranty claims, they did not specifically enumerate the various types of claims that they intended to encompass under ORS 30.900. Rather, they had a common concern that they were trying to address: the liability for acts or omissions occurring at the manufacturing stage, or, in the case of a distributor and retailer, the liability that resulted from placing a product in the chain of commerce that resulted in an ultimate sale to the consumer. Minutes, House Committee on the Judiciary, May 5, 1977; Minutes, Joint Committee on Trade and Economic Development, June 21, 1977.[5]

---

[4] Two years later, the legislature addressed the subjects of strict liability and punitive damages. Or Laws 1979, ch 866, §§ 2, 3.

[5] As the Supreme Court observed,

"In sum, the assumption throughout legislative consideration of and the rationale behind HB 3039 was that manufacturers, distributors, sellers and lessors should have the benefit of a limited and predictable time period during which they would be exposed to liability for defects that existed when the product left a respective party's hands."

*Erickson Air-Crane Co. v. United Technologies Corp.*, 303 Or 281, 288, 735 P2d 614 (1987).

As enacted, the definition of a "product liability civil action" in HB 3039 was not limited to negligence, strict liability, or breach of implied warranty claims, leaving the scope of ORS 30.900 and ORS 30.905 subject to some debate. We first considered whether the term "product liability civil action" embraced all theories that a plaintiff could adduce in an action based on a product defect in *Marinelli v. Ford Motor Co.*, 72 Or App 268, 696 P2d 1, *rev den*, 299 Or 251 (1985). In *Marinelli*, the plaintiff argued that the trial court erred by dismissing his negligence claims under the statute of ultimate repose in ORS 30.905(1) (1977). We held that the plain language of ORS 30.900 indicated that the legislature intended the statute to apply to *any* claim based on a product defect or failure to warn or instruct, including negligence claims. 72 Or App at 273. Since that time, we have construed the scope of ORS 30.900 and ORS 30.905 in a number of cases, most recently in *Simonsen, Kambury*, and *Gladhart v. Oregon Vineyard Supply Co.*, 164 Or App 438, 994 P2d 134 (1999), *rev'd in part on other grounds*, 332 Or 226, 26 P3d 817 (2001). When read together, those three cases synthesize our latest efforts to give effect to the legislative intent behind ORS 30.900 and ORS 30.905.

Whether a claim is based on a product defect or failure under ORS 30.900 is not always readily discernable. To facilitate that analysis, we have focused on the operative facts relied on by the plaintiffs and have determined from those facts the gravamen or predominant characteristic of the claim. A "predominant" characteristic assumes that other characteristics exist, but that there is one characteristic that is the most significant or dominant in the claim.

For instance, in *Kambury*, the plaintiff alleged claims of negligence, breach of warranty, intentional misrepresentation, and negligent misrepresentation. All of those claims arose out of one dominant fact—the fact that the airbag in the decedent's automobile deployed during an accident, striking her in the abdomen and causing her death. Consequently, we concluded that all of the plaintiff's claims were based on a product defect, *i.e.*, the defective airbag, and were therefore governed by ORS 30.905. 185 Or App at 638-42.

In *Simonsen*, the plaintiff was severely injured while driving a car with a defective front control arm that was "manufactured and sold as a new vehicle to a previous owner" by the defendant, and then "resold" to the plaintiff. 196 Or App at 462. The plaintiff alleged three claims against the defendant—one for "negligence" and two that included overlapping allegations of breaches of warranties of merchantability. *Id.* at 464-65. We concluded that the plaintiff's negligence claim based on the defendant's presale failure to warn her of a defect in the front control arm of the steering mechanism alleged a "product liability civil action" within the meaning of ORS 30.900 and was subject to the statute of ultimate repose under ORS 30.905. *Id.* at 467.

In addition, the plaintiff's breach of warranty claims in *Simonsen* alleged that the defendant's implied and express warranties of merchantability were breached by a defective product design and manufacture and by the defendant's failure to inspect, test, and warn of the defective steering mechanism. We concluded that "the gravamen of those allegations falls squarely within the ambit of ORS 30.900, rendering them subject to ORS 30.905(1)," because the dominant characteristic of those claims was a defect or failure concerning the steering mechanism. 196 Or App at 479.

In the third case, *Gladhart*, we explained that not all product-defect-related claims for damages are based on the predominant fact of a product defect or failure as defined by ORS 30.900. In *Gladhart*, the plaintiffs purchased grape plants from a nursery. The nursery expressly guaranteed to the plaintiffs that the grape plants were free of phylloxera, a microscopic aphid that feeds on grape vine roots, reduces grape production, and, eventually, kills the plant. The plaintiffs planted the grape plants in their existing vineyard, only to later discover that their vineyard was infested with phylloxera. Ultimately, they brought claims against the nursery for negligence *per se*, negligence, breach of contract, "products liability," breach of express warranty, breach of implied warranty of fitness for a particular purpose, breach of the implied warranty of merchantability, negligent misrepresentation, and breach of an express warranty under ORS chapter 72. After holding that the plaintiffs had failed to state

claims on their theories of negligence, negligence *per se*, and negligent misrepresentation, we addressed their "product liability" claim. We held that the plaintiffs' product liability claim was not barred by the statute of limitations in ORS 30.905(2) because that statute included a discovery rule.[6] We then turned to the plaintiffs' breach of contract and breach of warranty claims. We determined that the gravamen or predominant characteristic of those claims was *not* based on a product defect or failure under ORS 30.900 but was instead "the alleged guarantee arising from the sales contract that the grape plants were free of phylloxera." 164 Or App at 459.[7] Because the parties had contemplated—as the dominant part of their contractual relationship—the specific guarantee that the plants were free of disease, we concluded that those claims were not intended by the legislature to be governed by ORS 30.900 and ORS 30.905. *Id.*

■ From the above cases, two guiding principles inform our determination of whether a claim is based on a product defect or failure within the meaning of ORS 30.900 and ORS 30.905. First, our analysis is driven by the operative facts alleged in the claim at issue, regardless of how the claim is captioned or characterized by the plaintiff. In other words, we look beyond the label of the claim to the operative facts alleged; it is from those facts that we discern the gravamen or predominant characteristic of the claim. Second, if the gravamen of the claim is in fact one that is based on a product defect or failure as defined by ORS 30.900, ORS 30.905 will apply regardless of the characterization of the theory given to it by the plaintiff. With that analytical roadmap in mind, we turn to each of plaintiffs' claims and to whether they are based on a product defect or failure as contemplated by ORS 30.900.

### 1. *The UTPA claim*

■ Plaintiffs' UTPA claim is brought under ORS 646.638, a statutory scheme that provides for a civil right of

---

[6] The Supreme Court subsequently reversed on that issue. *Gladhart v. Oregon Vineyard Supply Co.*, 332 Or 226, 26 P3d 817 (2001).

[7] We noted that it "is the gravamen or the predominant characteristic of the claim, not the plaintiff's election, that governs the applicable statute of limitations." 164 Or App at 459 n 10.

action for loss of money or property as a result of the willful use or employment of an unlawful trade practice. A person engages in an unlawful trade practice when, in the course of the person's business, the person violates specific statutory prohibitions set out in ORS 646.608. Specifically, plaintiffs allege that the lumber defendants violated ORS 646.608(1)(e) (by representing that goods have "characteristics, * * * benefits, [and] qualities that they do not have"), ORS 646.608(1)(g) (by representing that goods "are of a particular standard, quality, or grade," and ORS 646.608(1)(t) (by failing to disclose, at the time of tender or delivery, "any known material defect or material nonconformity"). According to plaintiffs, their UTPA claim is not based on a product defect, but on an alleged "consumer misrepresentation under ORS 646.608." For the reasons stated below, we agree.

The allegations in plaintiffs' UTPA claim fall into two categories: (1) false representations made regarding the "standard, quality, or grade" of the lumber; and (2) the "failure to disclose any known material defect or material nonconformity." Under the first category, plaintiffs allege that the lumber defendants falsely represented that the lumber was "suitable for [p]laintiffs' [h]ome" and that the "lumber was at least standard quality or better." Under the second category, plaintiffs allege that the lumber defendants failed to disclose that "the lumber was obtained from salvage areas, or from old, sick, or dying trees" and that "the lumber was, or could be, infested with Golden Buprestid beetle larvae."

The gravamen of plaintiffs' UTPA claim is that, in the course of their businesses, the lumber defendants made representations or omissions that violated specific provisions of ORS 646.608. Plaintiffs' factual allegations are directed at elements of a claim created by the legislature under the UTPA to protect against a particular type of conduct, *i.e.*, willful misrepresentation concerning consumer goods. Thus, the gravamen of the facts alleged in plaintiffs' UTPA claim is not based on a product defect or failure, but on a willful misrepresentation made in the course of the lumber defendants' businesses. For that reason, we conclude that plaintiffs' UTPA claim is not governed by the limitation periods in ORS 30.905. Rather, plaintiffs' UTPA claim is governed by ORS

646.638(6), the limitation period for the statutory scheme under which that claim is brought.[8]

### 2. *The trespass claim*

■ Plaintiffs' trespass claim is based on the theory that the beetles/larvae constituted an unwanted intrusion on their property. Plaintiffs alleged that the lumber defendants "interfered with [p]laintiffs' exclusive use and possession of their property by severely infesting their property with [beetles/larvae]." Plaintiffs further allege that the lumber defendants' infestation of plaintiffs' property

> "was negligent because these [d]efendants supplied (without any warning whatsoever) lumber infested with [beetles/larvae] to [p]laintiffs' property, these [d]efendants failed to discover the beetles/larvae prior to delivery of the lumber to [p]laintiffs' property, and these [d]efendants failed to implement appropriate and necessary measures to identify and discover the lumber infested with [beetles] prior to delivery to [p]laintiffs' property."

According to plaintiffs, their trespass claim is not based on the fact that the lumber was defective; rather, "[t]hey are complaining that the lumber defendants trespassed their property by introducing beetles to their property, which have bored holes and *will continue to bore holes* through the building materials of their home, and invade their property." (Emphasis by plaintiffs.) Thus, they reason that the gravamen of their claim is based on a continuing trespass and is not governed by ORS 30.905.

We, like the trial court, disagree with plaintiffs' characterization of their trespass claim. Plaintiffs' trespass claim, at its core, is based on one predominant fact: that the lumber defendants delivered a defective product to plaintiffs without warning plaintiffs of the defect. The fact that the defect was itself a pest embedded in the lumber does not change the fact that the defect is the predominant characteristic of their claim. Plaintiffs do not allege any loss of use or enjoyment of their property that is unrelated to the effect that the beetles/larvae have had or will have on the lumber

---

[8] Later in this opinion, we address whether plaintiffs' UTPA claim is barred by ORS 646.638(6). 205 Or App at 363-64.

and structural integrity of their home. Moreover, the fact that damage from the beetles/larvae is continuing is of no legal consequence regarding the true gravamen of their claim; rather, that fact is merely evidence of continuing damages that arise from the nature of the defect in this case. Accordingly, we conclude that plaintiffs' trespass claim is based on a product defect or failure under ORS 30.900 and is subject to the limitation periods in ORS 30.905.

### 3. *The negligence / negligent misrepresentation claim*

Plaintiffs advance the same arguments with respect to their negligence and negligent misrepresentation claims as they do with respect to their trespass claim. Plaintiffs' negligence and negligent misrepresentation claims allege that the lumber defendants

> "were negligent by supplying (without any warnings whatsoever) lumber infested with Golden Buprestid beetles, by failing to discover the beetles/larvae prior to delivery of the lumber to [p]laintiffs' property, and by failing to implement appropriate and necessary measures to identify and discover lumber infested with Golden Buprestid beetles."

Plaintiffs further allege that defendants "failed to warn or disclose that the lumber was taken from salvage areas, or old, sick, or dying trees" and "failed to warn or disclose that the lumber was, or could be, infested with Golden Buprestid beetle larvae." The predominant characteristic of the claims is that defendants put a defective product into the stream of commerce and failed to inspect the product or warn plaintiffs of the defect. In our view, it follows that the claims are governed by ORS 30.900 and ORS 30.905.

### 4. *The breach of express warranty claim*

In addition to their UTPA, trespass, negligence, and negligent misrepresentation claims, plaintiffs also allege an additional claim against the lumber retailer, Camp, for breach of express warranty. According to their fourth amended complaint, Camp "expressly warranted to [p]laintiffs that the lumber would be standard grade or better, and was suitable for building a home for the life of the home."[9]

---

[9] Camp moved for summary judgment against the breach of warranty claim and simply incorporated the points and authorities submitted by the other lumber

Plaintiffs rely on *Gladhart* to support their position that breach of warranty claims are not subject to ORS 30.905; Camp, in turn, relies on *Simonsen* and *Kambury*—both decided after *Gladhart*—in which, in Camp's view, we held to the contrary.

As discussed above, *Simonsen, Kambury,* and *Gladhart* did not turn on whether the parties labeled their claims as "breach of contract" claims or "breach of warranty" claims. The analysis in all three cases was driven by the operative facts alleged in each case and the predominant characteristics of the claims. To reiterate, in *Simonsen* and *Kambury*, the predominant characteristic of the plaintiffs' claims was that the defendants had breached warranties regarding the merchantability of the vehicles by placing a defective product into the stream of commerce.[10] In *Gladhart*, by contrast, the nature of the defendant's promise was the predominant characteristic of the plaintiffs' breach of contract and breach of warranty claims. There, the parties specifically contracted for plants that were free of phylloxera. In that circumstance, the defendant did not simply place a defective product into the stream of commerce, or make generalized representations that the product would be merchantable or free from defect. Rather, the defendant's liability arose directly out of its failure to provide the very thing that it had promised to sell to the plaintiffs—phylloxera-free plants. We concluded that, to the extent that the plaintiffs' claims were based on that specific promise, the claims arose from the failure to perform under the contract, not from the defect in the product sold. 164 Or App at 459.

Our reasoning in the above cases informs our analysis in this case. Plaintiffs' express warranty claim alleges two contractual promises: (1) that the lumber would be of a particular grade or quality; and (2) that the lumber would be

defendants with respect to the claims against them. Camp did not offer any evidence or argument on summary judgment that contradicted plaintiffs' characterization of their breach of warranty claim in the fourth amended complaint. Because the breach of warranty claim was asserted only against Camp, none of the other defendants addressed the nature of that express warranty either. Accordingly, we accept plaintiffs' characterization of the express warranty by Camp.

[10] Although the plaintiff in *Simonsen* sought to enforce an express warranty, she was not in contractual privity with the defendants. 196 Or App at 479.

suitable for building a home for the life of the home. As in *Gladhart*, the gravamen of the claim is not simply that, as a result of a product defect, Camp breached a promise that the lumber would be free from defect or otherwise pass as merchantable in the lumber trade. Rather, plaintiffs' claim for breach of express warranty seeks to enforce specific contractual promises made by Camp to plaintiffs that the lumber would be of a particular grade and would be suitable for the particular purpose of building a home. Thus, we conclude that plaintiffs' breach of express warranty claim arises predominantly from the contractual obligations of the parties and not from a defect in the lumber.[11] Plaintiffs' breach of warranty claim, therefore, is governed by the limitation periods in ORS 72.7250 rather than ORS 30.905.[12]

B. *The timeliness of plaintiffs' claims*

Having determined the applicable statutory limitation periods for each of plaintiffs' claims, we next turn to whether those claims were timely filed.

1. *The UTPA claim*

■ As stated above, the applicable limitation period for plaintiffs' UTPA claim is found in ORS 646.638(6). That statute provides that actions brought under the UTPA "shall be

---

[11] Our conclusion that plaintiffs' claim for breach of an express warranty arises predominantly from the parties' contract is consistent with the legislative intent underlying ORS 30.900 and ORS 30.905. As discussed above, the legislature intended to place an outer limit on the time frame during which a manufacturer, lessor, or seller could be liable for a defect in the quality of goods placed into the stream of commerce. However, nothing in the text or context of the act or its legislative history suggests that the legislature intended to impede the ability of parties to make contractual promises, or to exempt manufacturers, sellers, or lessors— through the enactment of a statute of ultimate repose—from liability for specific promises that goods will have certain bargained-for characteristics or will last beyond the eight-year period of repose. Thus, our analysis gives effect to the various statutory schemes promulgated by the legislature.

[12] Though Oregon has defined a "product liability civil action" by statute, the term "product liability" has been described in one leading treatise as encompassing various theories of liability *outside* the contractual relationship. *See Griffith v. Blatt*, 334 Or 456, 461 n 3, 51 P3d 1256 (2002) ("According to John W. Wade et al., *Prosser, Wade and Schwartz's Cases and Materials on Torts*, 694 (9th ed 1994): 'Products liability' is the umbrella term for the liability of a manufacturer, seller or other supplier of chattels, *to one with whom he is not in privity of contract*, who suffers physical harm caused by the chattel. The liability may rest upon the supplier's negligence or upon a warranty, or it may be based on strict liability in tort." (Emphasis added.)).

commenced within one year from the discovery of the unlaw-
ful method, act or practice." The lumber defendants do not
dispute that there exists an issue of material fact as to
whether plaintiffs brought their UTPA claim within one year
of the discovery of the alleged violations, as required under
the UTPA. Thus, the trial court erred in granting summary
judgment in favor of the lumber defendants on that claim.[13]

2. *The trespass, negligence, and negligent misrepresen-*
   *tation claims*

■      Because we conclude that plaintiffs' trespass, negli-
gence, and negligent misrepresentation claims fall within the
scope of ORS 30.905, we must determine whether those
claims were timely filed under that statute. Plaintiffs do not
dispute that they filed all of their claims more than eight
years after the date on which the lumber was first purchased
for use. Instead, they argue that the eight-year period is not
an absolute bar and that, under ORS 30.905, "a plaintiff
essentially has up to 10 years from the date of purchase to file
a claim, if the damage occurs just short of the eight-year pur-
chase anniversary." In support of that position, plaintiffs cite
cases dating back to *Baird*, which held that the legislature
intended to enact a 10-year period of ultimate repose for
product liability claims comparable to the 10-year period in
ORS 12.115 for negligent injury to person or property.[14] That
objective, we held in *Baird*, was accomplished by providing
that, if an injury occurred within eight years of the date the

---

[13] With the exception of Camp, the lumber defendants argue, in the alterna-
tive, that plaintiffs' UTPA claim fails because there is no evidence that plaintiffs
had any dealings with them and, therefore, could not have relied on any represen-
tations by them regarding the lumber. Defendant Stimson, with whom plaintiffs
later settled, moved for summary judgment on the ground that plaintiffs dealt only
with Camp, and the other lumber defendants filed joinders in Stimson's motion.
Plaintiffs then moved to strike those joinders on various grounds, including that
joinder in fact-specific motions was improper and that the joinders were not timely
filed. It does not appear that the trial court ruled on plaintiffs' motions to strike the
joinders, and it is not clear whether the trial court considered the issues raised by
those joinders to be properly before it. Accordingly, we decline to rule in favor of the
lumber defendants on an alternative ground that, had the trial court ruled in favor
of plaintiffs on their motions to strike, would not have been before the trial court.

[14] Plaintiffs cite *Border v. Indian Head Industries, Inc.*, 101 Or App 556, 792
P2d 111 (1989), which in turn cites *Baird* and *Dortch v. A. H. Robins Co., Inc.*, 59 Or
App 310, 320-21, 650 P2d 1046 (1982), for the "eight plus two" construction of ORS
30.905.

product was first purchased, there was an additional two years from the date of injury within which to bring the action. Thus, if the injury or damage occurred at the end of the eight-year period of repose, a plaintiff could have almost 10 years from the date of purchase to bring the action. 47 Or App at 572. According to plaintiffs, the *Baird* interpretation of ORS 30.905 "has not been overturned by the Oregon Supreme Court," and therefore is controlling in this case.[15] The lumber defendants respond that *Baird* predated *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), and, though not expressly overturned, is inconsistent with the *PGE* approach to statutory construction. Alternatively, the lumber defendants argue that, even assuming that *Baird* is good law, plaintiffs' claims are untimely under ORS 30.905(2) because they were brought more than two years after plaintiffs were harmed.

We conclude that it is unnecessary to revisit our holding in *Baird* in this case, because the "damage" of which plaintiffs complain occurred when the beetles were first introduced to their property. According to plaintiffs, the damage to their residence occurred "from the time that beetles were introduced to the home's framing in 1993 to the present." Thus, necessarily, the two-year limitation period in ORS 30.905(2)—and under a *Baird* analysis—was triggered in 1993, at the time that the harm to plaintiffs' residence first occurred. Nonetheless, plaintiffs argue that, because the beetles/larvae continued to destroy their property throughout the eight-year period, they filed their action within two years of when their injury "occurred":

"Every day since the day they were included into the construction of plaintiffs' home, the beetles/larvae have engaged in ongoing destruction of plaintiffs' home. Consequently, the plaintiffs could have brought their claim yesterday, and it would still meet the requirements of ORS

---

[15] In subsequent cases, such as *Dortch* and *Border*, we adhered to our construction in *Baird*. More recently, in *Simonsen*, we raised the possibility that *Baird*'s "eight-plus-two" construction was written into the statutory text by virtue of the Supreme Court's discussion of *Baird* in *Erickson*, 303 Or at 288. 196 Or App at 475 n 12. However, in *Erickson*, the court specifically declined to express an opinion regarding the scope of ORS 30.905(1). 303 Or at 285 n 3.

30.905(2), because the damage 'happened' yesterday and is 'happening' today."

Plaintiffs' argument confuses the "damage" (singular) that they suffered and the *damages* (plural) that they continue to incur. In general, the term "damage" when used in a statute refers to harm that occurs as a result of an act or omission, not to the amount necessary to make plaintiffs whole because of the harm. *See Sager v. McClenden*, 296 Or 33, 37, 672 P2d 697 (1983) ("While the word 'damage' in the singular means loss, injury or harm resulting from an act or omission; when used in the plural, 'damages' means 'a compensation in money for a loss or damage.' " (Quoting *Black's Law Dictionary*, 351 (5th ed 1979).)). Here, ORS 30.905(2) provides, in part, that

> "a product liability civil action shall be commenced not later than two years after the date on which the death, injury or damage complained of occurs."

In the context of ORS 30.905(2), the word "damage" refers to the actionable harm caused allegedly by the defect in defendants' product. Because plaintiffs suffered "damage," *i.e.*, a cognizable harm under ORS 30.905, at the moment that the infested lumber was delivered and installed in their house, any further destruction of the residence may have increased the amount necessary to make plaintiffs whole,[16] but was not a new actionable harm to plaintiffs. *Cf. Duyck v. Tualatin Valley Irrigation Dist.*, 304 Or 151, 165, 742 P2d 1176 (1987) ("The same act or acts may cause damage to more than one item of property at two distinct points in time. Simply splitting a claim or omitting a claim for damages to property occurring at an earlier point in time will not suffice to avoid the effect of the statute of limitations. To do so would be to mix 'two distinct concepts, the occurrence of harm and the extent of damages.' " (Quoting *Jacquith v. Ferris*, 297 Or 783, 788, 687 P2d 1083 (1984).)). Plaintiffs cannot avoid the statute of limitations simply by characterizing the harm in this case as multiple injuries to their property when, in fact, all of

---

[16] From the evidence submitted on summary judgment, even this point appears dubious, as both plaintiffs and their experts contend that the house needed to be torn down from the outset because that was the only means of eradicating the infestation.

defendants' actions and any actionable harm giving rise to liability occurred at the time of delivery.[17]

Thus, unlike in *Baird*, where the injury to the plaintiff (resulting from the explosion of a television) allegedly occurred toward the end of the eight-year statute of repose, here, the harm to plaintiffs occurred at the time of delivery of the lumber, triggering at that time the two-year limitation period in ORS 30.905. Because plaintiffs did not bring their action within the time required by the statute, their trespass, negligence, and negligent misrepresentation claims are barred.[18]

### 3. *The breach of express warranty claim*

We turn, finally, to plaintiffs' breach of warranty claim against Camp. As stated above, the breach of warranty claim is governed by ORS 72.7250 rather than by ORS 30.905. On appeal, Camp argues that, even under ORS 72.7250, plaintiffs' breach of warranty claim is untimely. ORS 72.7250 provides, in part:

"(1)   An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

"(2)   A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly

---

[17] *See also Raethke v. Oregon Health Sciences Univ.*, 115 Or App 195, 199, 837 P2d 977 (1992), *rev den*, 315 Or 442 (1993) ("[O]ne may not avoid the Statute of Limitations by characterizing the harm as two different kinds of injuries rather than one injury that has caused more damage than was originally contemplated."). Plaintiffs' argument is inconsistent with the purpose and function of statutes of limitation and ultimate repose. Under plaintiffs' argument, parties would not be required under ORS 30.905 to bring an action during the eight-year limitation period as long as a product defect caused continued damages. Thus, plaintiffs' construction of ORS 30.905 could permit parties to knowingly sleep on their rights simply because the harm was ongoing, thereby salvaging their claims from statutes of repose and limitations.

[18] *See Gladhart*, 332 Or at 234-35 (because ORS 30.905(2) does not contain a discovery rule, plaintiffs' injury occurred when they purchased and planted infested grapes in their vineyard and not when they ultimately discovered the infestation).

extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."

Camp contends that it is undisputed that this action was filed more than four years after final delivery was made in June 1993 and that there is no evidence (as distinguished from plaintiffs' allegations) that the warranty by Camp *explicitly* extended to the life of the home, thereby extending the time in which a breach of warranty claim would have accrued.

With respect to the allegation that Camp warranted that the lumber would be "standard grade or better," we agree with Camp that the claim is time barred. Any claim for breach of that alleged warranty accrued in 1993, and plaintiffs were required to file a claim based on that breach within four years of that date. Accordingly, the trial court's grant of summary judgment in favor of Camp as to that allegation was correct, albeit for a different reason than articulated by the trial court.

■ As to Camp's alleged warranty that the lumber would be "suitable for building a home for the life of the home," Camp has the initial burden of demonstrating under ORCP 47 the absence of a genuine issue of material fact as to whether a claim based on the breach of that alleged warranty is timely. Under ORS 72.7250(2), a claim for breach of an express warranty of future performance does not accrue until the breach is discovered. In this case, plaintiffs alleged that Camp expressly warranted that the lumber would be suitable "for the life of the home." When that allegation is read in the light most favorable to plaintiffs, it constitutes an express warranty of future performance on the part of Camp.

Camp contends, however, that, because there is no evidence in the record of an *express* lifetime warranty (as opposed to plaintiffs' allegation), Camp is entitled to summary judgment. However, Camp did not move for summary judgment on the ground that there is no evidence that it made an express warranty regarding future performance, and did not otherwise reasonably alert plaintiffs that it was challenging the allegation regarding the warranty "for the

life of the home" for purposes of its motion. Had Camp done so, plaintiffs would have had the opportunity to create a different record in the trial court on that issue. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 660, 20 P3d 180 (2001) ("[E]ven if the record contains evidence sufficient to support an alternative basis for affirmance, if the losing party might have created a *different* record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance." (Emphasis in original.)). Thus, we decline Camp's invitation to affirm the judgment in that respect on alternative grounds. We conclude that the trial court correctly granted summary judgment in favor of Camp as to the allegation that Camp warranted a particular grade or quality of lumber, but that the judgment must be reversed with regard to the allegation that Camp warranted that the lumber would be suitable for the life of the home.

Judgment on Unlawful Trade Practices Act claim reversed and remanded; judgment reversed in part and remanded on claim against defendant Camp's Lumber & Building Supply, Inc. for breach of warranty; otherwise affirmed.